486 So.2d 493 (1986)
Ex parte Mary Alice KENNEDY.
(Re: Mary Alice Kennedy v. State).
84-1259.
Supreme Court of Alabama.
February 14, 1986.
*494 Jeffery C. Duffey and Margaret L. Givhan, Montgomery, for petitioner.
Charles A. Graddick, Atty. Gen. and James B. Prude, Asst. Atty. Gen., for respondent.
Prior Report: 486 So.2d 490.
PER CURIAM.
The issue presented is one of first impression in Alabama: whether an off-duty police officer working as a part-time pest exterminator acts in a private capacity when he recognizes and seizes marijuana in a private residence.
Herman Corley is a Montgomery city police officer who, during off-duty hours, works as an exterminator for a pest control service. He was assigned the duty of spraying an apartment complex, under an agreement with the apartment manager. The manager gave him a master key to all the apartments.
Corley entered Mary Alice Kennedy's apartment when she was not at home and began his usual spraying treatment. While doing his spraying, he noticed three plants that appeared to be marijuana plants. Corley pulled a leaf from one to later take to the police vice laboratory to substantiate his belief that the plant was marijuana. He then finished spraying the balance of the building and that afternoon presented the leaf to the police lab, which did verify that the leaf was marijuana. He signed an affidavit and obtained a search warrant. The apartment was searched, and the plants were discovered and seized.
The defendant presented to us the following statement of facts pursuant to Rule 39(k), A.R.A.P. These facts had been omitted from the opinion of the Court of Criminal Appeals. We find this to be a correct statement, based on the record:
Kennedy did not give permission to anyone to enter her apartment.
She did not know that her apartment was being sprayed from January to December 1983, because the exterminator no longer left business cards; she could not detect any odors; and bugs were still present.
The apartment manager does not notify tenants when apartments are to be exterminated. She stated, however, that tenants are aware of the service.
Corley was able to identify the plants as marijuana because of his "on the job experience and training with the Montgomery Police Department." He also said, "I'm a police officer 24 hours a day."
Corley was able to identify Kennedy as the occupant of the apartment because he had seen mail on her table addressed to her.

*495 The affidavit for the search warrant was signed:
 /s/ H.D. Corley
 H.D. Corley
 Police Officer
When Kennedy got home from work, she discovered police officers searching her apartment. Corley was present but not involved in the actual search.
Corley found marijuana in other apartments that day.
The Court of Criminal Appeals held that Officer Corley's actions were those of a private citizen and, therefore, not governed by the Fourth Amendment. The Fourth Amendment prohibition against unreasonable searches and seizures applies only to government action. See, e.g., Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). "[I]t is wholly inapplicable `to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.' [Citation omitted.]" United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85, 94 (1984). In affirming Kennedy's conviction, the Court of Criminal Appeals found persuasive authority in State v. Pearson, 15 Or.App. 1, 514 P.2d 884 (1973). We think that case is very different. We reverse.
In Pearson, the defendant left her car at a garage for servicing, and a mechanic, who was also a city police reserve officer, opened the car door and smelled the strong odor of recently burned marijuana. He found several marijuana cigarette butts in the ashtray and notified the police station. A regular on-duty officer responded to the call, saw the cigarette butts, and handed the mechanic an envelope, into which the mechanic dumped the ashtray's contents. The mechanic also searched the "jock box" of the car for drugs, but no further search was conducted. 15 Or.App. at 3, 514 P.2d at 884-85.
The Oregon court stated: "The crucial question therefore becomes the extent of the official involvement ... [which] turns on the capacity in which [the mechanic/officer] acted when he found the marijuana...." Id., 15 Or.App. at 6, 514 P.2d at 886. The court held that the officer was not acting in an official capacity when he discovered the contraband. Id., 15 Or.App. at 9, 514 P.2d at 887. The court further stated:
"Having discovered the marihuana we believe that [the mechanic/officer] acted properly in notifying the local police department.... It was proper for [the mechanic/officer] to remove the ash tray from the automobile and dump the contents into an evidence envelope provided by Officer Havicus...."
Id., 15 Or.App. at 9-10, 514 P.2d at 887-88.
In the case at hand, Officer Corley stepped out of his exterminator role and became a government agent when he examined the plants, took a leaf for verification, and memorized the name on Kennedy's mail for identification purposes. According to Corley's own testimony, he used the knowledge and skill acquired from his police training and experience to spot the marijuana. Additionally, the search in Pearson occurred in a car which had been brought to a public service station. Here, the search occurred in a private home, without Kennedy's consent. There is a greater expectation of privacy in a home than in a car. The mechanic in Pearson called the police, and an on-duty officer arrived to answer the call. He did not sign an affidavit nor did he participate in obtaining a search warrant. Here, Corley performed several functions usually performed by an officer, such as seizing evidence for analysis and supplying an affidavit to secure a search warrant. The defendant in Pearson consented to the mechanic's being in the car. According to Kennedy, she did not consent to anyone's entry into her apartment.
People v. Wolder, 4 Cal.App.3d 984, 84 Cal.Rptr. 788 (1970), involved a similar situation. There, a landlord told an off-duty police officer that he was storing some boxes for the officer's daughter. The officer, who served in a neighboring jurisdiction, *496 asked to see the boxes. He found, inside an open box, several typewriters and some tools which he recognized as burglar tools. He immediately notified the city police. The search was held not to violate the Fourth Amendment because the off-duty officer acted in a private capacity and not in his role as an officer. In reviewing this case, the Pearson court stated: "This [holding] was further indicated by his notification of the Long Beach police rather than taking official action himself." Pearson, supra, 15 Or.App. at 8, 514 P.2d at 887.
In State v. Brothers, 4 Or.App. 253, 478 P.2d 442 (1970), an off-duty police officer, working part-time as an ambulance driver, notified the state police of a shooting. The off-duty officer returned to the apartment where he had picked up the victim and the defendant, searched it, and recovered a rifle, which led to the defendant's conviction. The court held that the evidence was illegally seized, because a warrant was required. In reviewing this case, the Pearson court stated: "While he was never officially `on-duty,' he was acting as a policeman when he returned and searched the apartment." Pearson, supra, 15 Or.App. at 8, 514 P.2d at 887.
State v. Wilkerson, 367 So.2d 319 (La. 1979), is the closest case factually that we have found. There, an off-duty police officer worked part-time as a security guard for an apartment complex. The apartment manager gave his consent to the officer/guard to search an apartment where the defendant had temporarily stored his belongings, with the manager's permission. During the search, the guard discovered marijuana in the defendant's luggage. The court held that the security guard was acting in his capacity as a law enforcement officer at the time he conducted the warrantless search. According to the court: "A Louisiana deputy sheriff never truly goes off duty. He remains at all times a member of the law enforcement agency, charged with greater knowledge and responsibility in criminal affairs." Wilkerson, supra, at 321.
We think the present case is more analogous to the Louisiana case than to the Oregon case relied upon by the Court of Criminal Appeals. When Corley took the leaf from the apartment, he did so as a police officer, not as a private citizen. This constituted a warrantless seizure by a government officer proscribed by the Constitution of this state, as well as by the Fourth Amendment to the Constitution of the United States.
The State, therefore, has the burden of showing the justification for this warrantless seizure. It has not done so. There is no evidence that the defendant consented to the seizure. See Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Nor is there any evidence that exigent circumstances existed. See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The State's argument that the plain view exception applies is misplaced. This exception assumes that the article seized is in plain view to an officer who has a legitimate reason as a police officer to be in a position to see the article. See Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Here, Corley gained entrance into the apartment not as a police officer but as an exterminator. He cannot subsequently bootstrap himself into the plain view exception. Finally, we are mindful that a warrantless seizure in a home is subject to greater scrutiny than is a similar seizure in a public place. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).
We agree with the Court of Criminal Appeals that of necessity these cases, like most others, must be decided on a case-by-case basis. We disagree with that court's holding that the warrantless seizure of the evidence in this case was not by a police officer.
The judgment is reversed and the cause remanded.
REVERSED AND REMANDED.
*497 TORBERT, C.J., and MADDOX, JONES, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.
FAULKNER, J., dissents.
ALMON, J., not sitting.
FAULKNER, Justice (dissenting):
I dissent. In my opinion, the holding by the majority in this case conflicts with the decision of this Court in Robinson v. State, 361 So.2d 1113 (Ala.1978).
In Robinson, this Court held that Officer Jones, an off-duty policeman who was "moonlighting" as a bank security guard, was not actively engaged in his lawful duties as a peace officer when he was assaulted by Robinson, the defendant charged with the assault.
In this case, the majority holds that Officer Corley was a civilian when he entered Kennedy's apartment to spray for bugs, but when he saw and retrieved leaves from marijuana plants, he was instantly converted into a police officer, performing his lawful duties. Hence, his conduct violated the Fourth Amendment. I do not understand how a leopard's spots could be changed so quickly.
In my opinion, Corley, the "bug man," was acting as a private citizen and did what an alert private citizen would have done under the circumstances. The majority says that Corley used his police knowledge in recognizing the marijuana. That's really no big deal. Ask any sixth grader what the stuff looks like. More than likely, he can tell you.
I would affirm.